1

2

3

O

4

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8                         EASTERN DIVISION

9

10  BREE SMITH,                    )    Case No. EDCV 09-00186-MLG
                                   )
11              Plaintiff,         )    MEMORANDUM OPINION AND ORDER
                                   )
12         v.                      )
                                   )
13  MICHAEL J. ASTRUE,             )
    Commissioner of the Social     )
14  Security Administration,       )
                                   )
15                                 )
                Defendant.         )
16  _____)

17

18      Plaintiff Bree Smith seeks judicial review of the Commissioner's

19  final decision denying her application for Supplemental Security Income

20  ("SSI") benefits. For the reasons set forth below, the decision of the

21  Administrative Law Judge ("ALJ") is affirmed.

22

23  **I.   Background**

24      Plaintiff filed her application for SSI benefits on October 31,

25  2005, alleging disability as of May 1, 2001 due to affective mood

26  disorder. (Administrative Record ("AR") at 20, 63-68.) Plaintiff was

27  born on June 10, 1958 and was 53 years old at the time of her

28  application. (AR at 18, 63.) She completed the eleventh grade, and

1  has been employed as a machine packager, receptionist, group home
2  counselor and cashier. (AR at 17-18, 80.)

3      Plaintiff's application was denied initially on March 24, 2006 and
4  upon reconsideration on May 23, 2006. (AR at 31-36, 41-46.) An
5  administrative hearing was held on July 19, 2007 before ALJ Jay E.
6  Levine. (AR at 195-214.) Plaintiff, represented by attorney Bill LaTour,
7  testified telephonically at the hearing. (AR at 195-208.) Vocational
8  expert ("VE") Joseph Mooney also testified at the administrative
9  hearing. (AR at 208-211.)

10     On August 15, 2007, ALJ Levine denied Plaintiff's application for
11 benefits. (AR at 11-19.) The ALJ found that Plaintiff had not engaged in
12 substantial gainful activity since the application date of October 31,
13 2005. (AR at 13.) The ALJ further found that Plaintiff had the severe
14 impairment of depressive disorder not otherwise specified. 20 C.F.R.
15 416.920(c). (Id.) However, Plaintiff's impairments did not meet and were
16 not medically equal to, one of the listed impairments in 20 C.F.R., Part
17 404, Subpart P, Appendix 1. (Id.) The ALJ determined that, while
18 Plaintiff could not perform her past relevant work, she retained the
19 residual functional capacity ("RFC") to perform a full range of work at
20 all exertional levels with the following limitations: "The claimant is
21 precluded from working on dangerous machinery with no production quotas
22 such as piece work. She should work with things rather than people." (AR
23 at 14.) The ALJ concluded that Plaintiff was not disabled within the
24 meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(f). (AR at
25 19.)

26     On December 3, 2008, the Appeals Council denied review (AR at 3-5),
27 and Plaintiff timely commenced this action for judicial review. On
28 September 1, 2009, the parties filed a Joint Stipulation ("Joint Stp.")

1  of disputed facts and issues. Plaintiff contends that the ALJ erred by:
2  (1) failing to properly consider Plaintiff's treating physician's
3  opinion regarding her mental impairment; (2) failing to properly
4  consider the type, dosage and side effects of Plaintiff's medication;
5  (3) failing to properly consider the Plaintiff's RFC; and (4) failing to
6  pose a proper hypothetical question to the VE. (Joint Stp. at 2-3).
7  Plaintiff seeks reversal of the Commissioner's denial of her application
8  and payment of benefits or, in the alternative, remand for a new
9  administrative hearing. (Joint Stp. at 21.) The Commissioner requests
10 that the ALJ's decision be affirmed. (Joint Stp. at 22.)

11

12 **II.  Standard of Review**

13      Under 42 U.S.C. § 405(g), a district court may review the
14 Commissioner's decision to deny benefits. The Commissioner's or ALJ's
15 decision must be upheld unless "the ALJ's findings are based on legal
16 error or are not supported by substantial evidence in the record as a
17 whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v.*
18 *Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means
19 such evidence as a reasonable person might accept as adequate to support
20 a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark*
21 *v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a
22 scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*,
23 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial
24 evidence supports a finding, the reviewing court "must review the
25 administrative record as a whole, weighing both the evidence that
26 supports and the evidence that detracts from the Commissioner's
27 conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If
28 the evidence can support either affirming or reversing the ALJ's
   conclusion," the reviewing court "may not substitute its judgment for

3

1

2  that of the ALJ." *Robbins*, 466 F.3d at 882.

3

4  **III.  Discussion**

5       A.    **The ALJ Accorded Appropriate Weight to the Opinion of**
6             **Plaintiff's Treating Physician**

7       Plaintiff contends that the ALJ failed to properly consider the
8  opinion of Plaintiff's treating psychiatrist, Dr. Imelda Alfonso. (Joint
9  Stp. at 3.) In treatment records dated September 22, 2006 to April 13,
10 2007, Dr. Alfonso reported that Plaintiff continued to experience
11 problems with impaired concentration, inability to focus, and mood
12 swings. (AR at 180-182, 185, 189.) The ALJ found: "Subsequent treatment
13 records indicate that claimant has some problems with poor
14 concentration, but Dr. Alfonso noted that her condition was gradually
15 improving with medication (Exhibit 9F)." (AR at 16.) Plaintiff contends
16 that this statement by the ALJ misrepresents the evidence, and that the
17 medical record actually demonstrates that, although Plaintiff showed
18 some improvement, she still has difficulty with impaired concentration
19 and an inability to focus. (Joint Stp. at 4.)

20      The ALJ should generally accord greater probative weight to a
21 treating physician's medical opinion than to opinions from non-treating
22 sources. See 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and
23 legitimate reasons for rejecting a treating physician's opinion in favor
24 of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495
25 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
26 1996). However, the ALJ need not accept the opinion of any medical
27 source, including a treating medical source, "if that opinion is brief,
28 conclusory, and inadequately supported by clinical findings." *Thomas v.*

1  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v.*

2  *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be

3  considered by the adjudicator in determining the weight to give a

4  medical opinion include: "[l]ength of the treatment relationship and the

5  frequency of examination" by the treating physician; and the "nature and

6  extent of the treatment relationship" between the patient and the

7  treating physician. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii),

8  416.927(d)(2)(i)-(ii); *Orn*, 495 F.3d at 631-33.

9        The ALJ properly considered Dr. Alfonso's treatment records and

10  accurately described Dr. Alfonso's conclusions. First, the ALJ correctly

11  noted that Dr. Alfonso's monthly treatment records from July 29, 2005 to

12  May 2007 "consisted essentially of medication refills and adjustments to

13  medication with no lasting side effects noted from medication

14  treatment." (AR at 16, 157-192.) A review of Dr. Alfonso's treatment

15  notes confirms the ALJ's finding that Plaintiff's visits were generally

16  for medication refills and that Plaintiff reported few or no side

17  effects from her medication. (AR at 158, 159, 162, 164, 165, 168, 170-

18  172.) The ALJ also noted that Plaintiff "reported on several occasions

19  that medication was helping to relieve her symptoms." (AR at 16.)

20        The ALJ accurately noted that Dr. Alfonso initially diagnosed

21  Plaintiff with "some symptoms of depression and anxiousness," but that

22  "the rest of the examination was within normal limits." (AR at 16, 173-

23  174.) The ALJ also correctly found that Plaintiff's treatment records

24  indicate that she "has some problems with poor concentration, but Dr.

25  Alfonso noted that her condition was gradually improving with

26  medication." (AR at 16, 180, 185.) Thus, the ALJ properly considered and

27  correctly characterized Dr. Alfonso's treatment records. *See Andrews v.*

28  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989) (holding that it is the

1  responsibility of the ALJ to resolve conflicts and ambiguities in the
2  medical record and determine the credibility of medical sources).

3       The ALJ also properly considered and adopted the opinion of the
4  consultative examining psychiatrist, Dr. Jason Yang, in finding that
5  Plaintiff's mental impairment did not prevent her from working. Based
6  upon his examination, Dr. Yang found that Plaintiff could pay attention,
7  follow instructions, remember and complete simple and complex tasks,
8  interact appropriately with co-workers and supervisors, maintain regular
9  attendance, and handle the stresses of a normal work environment. (AR at
10 16, 134-138.) *See Tonapetyan*, 242 F.3d at 1149 (holding that the opinion
11 of a non-examining medical expert "may constitute substantial evidence
12 when it is consistent with other independent evidence in the record").
13 The ALJ also properly relied on the opinions of the State Agency
14 physicians who determined that Plaintiff had only mild difficulty in
15 maintaining concentration, persistence, and pace, and that Plaintiff had
16 moderate limitations in understanding and carrying out detailed tasks.
17 (AR at 16-17, 139-156.) The ALJ's finding that the reviewing physicians'
18 opinions were consistent with the evidence as a whole was supported by
19 substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th
20 Cir. 2002) ("The opinions of non-treating or non-examining physicians
21 may also serve as substantial evidence when the opinions are consistent
22 with independent clinical findings or other evidence in the record.").

23      Based on this record as a whole, it is clear that the ALJ gave
24 appropriate weight to the opinion of Plaintiff's treating psychiatrist,
25 Dr. Alfonso, and that the decision to reject that opinion was supported
26 by substantial evidence. Accordingly, no relief is warranted on this
27 claim of error.

28 //

6

**B.    The ALJ Properly Considered the Type, Dosage and Side Effects of Plaintiff's Medication**

Plaintiff contends that the ALJ failed to properly consider the type, dosage, and side effects of her medication. (Joint Stp. at 9.) In addition, Plaintiff argues that the ALJ failed to properly consider changes in Plaintiff's prescribed dosage of various drugs as demonstrating episodes of decompensation. (Joint Stp. at 10-11.)

"The ALJ must consider *all factors* that might have a 'significant impact on an individual's ability to work.'" *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993) (emphasis in original) (quoting *Varney v. Secretary of Health & Human Serv.*, 846 F.2d 581, 585 (9th Cir. 1987)), *relief modified*, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." *Erickson*, 9 F.3d at 818; *Varney*, 846 F.3d at 585 ("[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized.") (citation omitted). However, Plaintiff bears the burden of producing medical evidence to show that any claimed side effects from medication are severe enough to interfere with her ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that "passing mentions of the side effects of ... medication in some of the medical records" was insufficient evidence).

In support of her claim, Plaintiff cites to WebMD[1] for a myriad of possible side effects caused by the medications Lamictal, Wellbutrin and Abilify. (Joint Stp. at 10). The Court notes that the Social Security regulations do not require an ALJ to consider a claimant's medications

---

[1]  http://www.webmd.com/drugs/index-drugs.aspx

as part of every disability determination. The mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any one of the possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working for *these* reasons.

This specific information must be presented to the ALJ as part of the claimant's burden to demonstrate disability. If Plaintiff's medications prevent her from working, she has to say so. Only at that point does the type, dosage, effectiveness, and side effects of medication become relevant, so the ALJ can evaluate Plaintiff's credibility. As the regulations make clear, the ALJ must consider these factors only "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects," because "the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. 1996). Absent an individual's statements of impairment at the outset, the ALJ has no duty to inquire as to the claimant's medications.

Plaintiff has failed to demonstrate that side effects from her medications precluded her from engaging in substantial gainful activity. During the administrative hearing, Plaintiff never mentioned any side effects from her medications or claimed that she was unable to work due to side effects. (AR at 195-208.) Plaintiff's counsel cites to a "Disability Report - Appeal," dated April 6, 2006, in which she states that she has various side effects from her medications, including lethargy, dizziness, nausea, slurred speech, blurred vision, loss of

motor function, difficulty concentrating and tripping while walking. (AR at 97.) However, aside from this single report, there is no other evidence in the record regarding any serious side effects from Plaintiff's medication or any evidence indicating that the side effects of Plaintiff's medications would have impaired her ability to work. *See Maounis v. Heckler*, 738 F.2d 1032 (9th Cir. 1984) ("[A] claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings."). In fact, the longitudinal treatment notes show that Plaintiff had a good response to her medication and reported no side effects except for occasional drowsiness. (AR at 158, 159, 162, 164, 165, 168, 170-172.) *See Osenbrock*, 240 F.3d at 1164. As the ALJ correctly noted, Plaintiff's "treatment has consisted essentially of medication refills and adjustments to medication with no lasting side effects from medication treatment." (AR at 16.)

Plaintiff also claims that seven changes in the prescribed dosages of various medications between October 7, 2005 and January 26, 2007 should each have been considered as an episode of decompensation[2] by the ALJ. (Joint Stp. at 11.) The ALJ determined that Plaintiff "has experienced no episodes of decompensation." (AR at 13.) There is no evidence in the medical record to show that Plaintiff experienced any episodes of decompensation. Although Plaintiff's medication was adjusted

---

[2] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace .... Episodes of decompensation may be inferred from medical records showing significant alteration in medication; ... or other relevant information in the record about th existence, severity, and duration of the episode." "Episodes of extended duration" means "three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks." 20 C.F.R. § 404, Subpart. P, App. 1, § 12.00.C.4.

9

a number of times, the longitudinal record demonstrates that Plaintiff generally had a good response to her medication with few side effects. (AR at 158, 159, 162, 164, 165, 168, 170-172.) Further, neither the consulting examining psychiatrist, Dr. Wang, nor the State Agency physicians who reviewed the evidence noted any episodes of decompensation. (AR at 134-138, 139-142, 143-156.) Accordingly, substantial evidence supported the ALJ's finding that there were no episodes of decompensation.

C.   **The ALJ Properly Considered the Plaintiff's RFC**

Although Plaintiff labels this claim as a failure by the ALJ to properly consider the Plaintiff's RFC, Plaintiff in fact appears to be arguing that the ALJ failed to properly determine the degree of Plaintiff's functional limitations when determining whether her mental impairment meets or is equal to one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Joint Stp. at 14.) The ALJ found: "In activities of daily living and in maintaining concentration, persistence, and pace, the claimant has mild restriction. In social functioning, the claimant has no difficulties and the claimant experienced no episodes of decompensation." (AR at 13.) Plaintiff contends that Dr. Alfonso's opinion that Plaintiff continues to have difficulty in focusing and concentrating, as well as the changes to her medication, which evidence episodes of decompensation, contradict the ALJ's assessment of Plaintiff's degree of functional limitation. (Joint Stp. at 15.)

The ALJ appropriately determined Plaintiff's functional limitations. 20 C.F.R. § 416.920a(c)(3-4),(e)(2). As discussed above, the ALJ properly considered Dr. Alfonso's treatment records and found that the longitudinal treatment history demonstrated that, despite

10

having some problems with concentration, Plaintiff was nevertheless gradually improving with medication. The ALJ also properly relied upon the opinions of the examining psychiatrist, Dr. Yang, and the state agency examining physicians in concluding that Plaintiff had few to no functional restrictions. Further, the ALJ's determination that there were no episodes of decompensation was supported by substantial evidence. A change in the dosage of Plaintiff's medication does not, without more, show that she experienced an episode of decompensation, especially given that there was no other evidence of decompensation in the medical record.

Accordingly, the ALJ's determination regarding the degree of Plaintiff's functional limitation was supported by substantial evidence and no relief is warranted on this issue.

**D.   The ALJ Posed a Complete Hypothetical Question to the VE**

Plaintiff next claims that the ALJ failed to pose a complete hypothetical question to the VE. (Joint Stp. at 17.) Plaintiff contends that the ALJ should have included in the hypothetical question the findings of the State Agency reviewing physician that Plaintiff is moderately limited in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions. (Joint Stp. at 18; AR at 139.) Plaintiff also argues that the ALJ was required to include in the hypothetical Dr. Alfonso's assessment that Plaintiff continues to be unstable due to her persistent problems with concentration and focusing, as well as Plaintiff's multiple episodes of decompensation. (Joint Stp. at 18; AR at 180-182.)

At the hearing, the ALJ posed the following hypothetical to the VE:

Q:   Mr. Mooney, assume a hypothetical individual of
     claimant's age, education, prior work experience. Assume

11

this person has no exertional level limitations and the person should not work on dangerous machinery. No postural limitations, but no production quotas such as piece work and working with things rather than with people. Could such a hypothetical individual perform any of the claimant's past work?

(AR at 210.) Based upon this hypothetical, the VE found that Plaintiff could not perform her past relevant work but that there were a significant number of jobs in the national and local economies that Plaintiff could perform. (Id.) The ALJ relied on the VE's testimony in concluding that, although Plaintiff could not perform her past relevant work, she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and was therefore not disabled. (AR at 19.)

A hypothetical posed to a vocational expert must contain all of the limitations of a particular claimant. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)(citations omitted). If the hypothetical fails to reflect all of the claimant's limitations, the vocational expert's testimony cannot support a finding that the claimant could perform jobs in the national economy. *Id*. However, the ALJ need only include in the hypothetical those limitations that the ALJ finds credible and that are supported by substantial evidence in the record. *Osenbrock*, 240 F.3d at 1164-1165.

The hypothetical that the ALJ posed to the VE contained all of the limitations that were supported by substantial evidence in the record. Contrary to Plaintiff's contention, the ALJ did in fact consider and adopt the State Agency physicians' severity finding and mental residual functional capacity assessment. (AR at 16-17.) The State Agency

1    reviewing physician determined that Plaintiff had mild restrictions in
2    activities of daily living and mild difficulty maintaining
3    concentration, persistence, and pace with no other limitations in any
4    area of functioning. (AR at 143-156.) The State Agency reviewing
5    physician determined that Plaintiff retained the RFC to "sustain simple
6    repetitive tasks with adequate pace and persistence, can adapt and
7    relate to co-workers and supervisors but likely cannot work with the
8    public." (AR at 139-141.) Further, as discussed in detail above, the ALJ
9    appropriately considered Dr. Alfonso's opinion and correctly concluded
10   that Plaintiff's health was generally improved with medication and that
11   there was no medical evidence to show that Plaintiff was unable to work.
12   Also, as discussed previously, there was no evidence in the record to
13   show that Plaintiff had ever experienced any episodes of decompensation
14   due to changes in her medication. Therefore, the ALJ was not required
15   to include any of these alleged restrictions in the hypothetical posed
16   to the VE because they were not supported by substantial evidence in the
17   record. *See Magallanes v. Bowen*, 881 F.2d 747, 756-757 (9th Cir. 1989)
18   (holding that it is proper for an ALJ to limit a hypothetical to
19   restrictions supported by substantial evidence in the record).

20       The ALJ posed an appropriate hypothetical to the VE, containing all
21   of Plaintiff's limitations as recommended by the examining and reviewing
22   physicians and adopted by the ALJ. The ALJ properly relied on the VE's
23   opinion, and the decision is supported by substantial evidence in the
24   record. Therefore, no relief is warranted on this claim of error.
25   //
26   //
27   //
28   //

**IV.**   **Conclusion**

      For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

DATED: September 11, 2009

                                        _____
                                        Marc L. Goldman
                                        United States Magistrate Judge